UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| SARAH KABIR,<br><br>  Plaintiff,<br><br>v.<br><br>EMERGENCY PHYSICIANS INTEGRATED CARE, LLC; DAVIS HOSPITAL AND MEDICAL CENTER, L.P.; DIRECT RADIOLOGY, PLLC; ALLEN A. NAWROCKI, M.D.; TYLER J. WILLIAMS, M.D.; CHRISTOPHER K. ANDERSON, M.D.; and DOES I-X,<br><br>  Defendants. | **ORDER GRANTING DEFENDANTS' MOTION TO COMPEL RESPONSE TO INTERROGATORY (DOC NO. 41)**<br><br>Case No. 2:23-cv-00096<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge Daphne A. Oberg |

Defendants Tyler J. Williams, M.D., and Emergency Physicians Integrated Care, LLC (collectively "Defendants") have filed a discovery motion seeking to compel plaintiff Sarah Kabir to provide a complete discovery response to Defendants' Interrogatory 1.[1] Interrogatory 1 requests information regarding one of Ms. Kabir's former boyfriends. Ms. Kabir opposes the motion.[2] A hearing was held June 13, 2023.[3] Considering the broad scope of discovery and the limited nature of this discovery dispute, Interrogatory 1 is relevant to Defendants' defenses. Accordingly, Defendants' motion is granted.

---

[1] (Defs.' Statement of Disc. Issues re: Pl.'s Insufficient Disc. Resps. ("Mot."), Doc. No. 41); *see also* Fed. R. Civ. P. 37(a)(3)(B).

[2] (Pl.'s Opp'n to Defs.' Statement of Disc. Issues re: Pl.'s Insufficient Disc. Resps. ("Opp'n"), Doc. No. 43.)

[3] (Minute Entry, Doc. No. 45.)

1

BACKGROUND

Ms. Kabir brings medical malpractice claims against Defendants.[4] According to Ms. Kabir's Amended Complaint, after losing consciousness on February 14, 2021, Ms. Kabir was taken to the emergency department at Davis Hospital.[5] Upon arriving at the hospital, Ms. Kabir was treated by Dr. Williams.[6] Dr. Williams ordered, and Ms. Kabir underwent, drug testing (which came back negative) and a computed tomography ("CT") scan.[7] The CT scan was sent to a radiologist, Dr. Allen A. Nawrocki, who interpreted it as normal.[8] Unable to bring Ms. Kabir back to consciousness, Dr. Williams sedated, intubated, and admitted her to the Intensive Care Unit under the care of Dr. Christopher K. Anderson.[9] The next day, a different doctor—realizing Ms. Kabir was suffering from a stroke—ordered additional brain/head imaging.[10] This imaging confirmed a clot in Ms. Kabir's basilar artery, which can be seen in the CT scans.[11] By the time the clot was discovered, Ms. Kabir was already outside the twenty-four-hour window for treating

---

[4] (Am. Compl. ¶ 45, Doc. No. 12.)

[5] (*Id.* at ¶ 19.)

[6] (*Id.* at ¶ 21.)

[7] (Opp'n 1, Doc. No. 43.)

[8] (*Id.* at 1–2; *see also* Am. Compl. ¶¶ 29–30, Doc. No. 12.)

[9] (Opp'n 2, Doc. No. 43; *see also* Am. Compl. ¶ 33, Doc. No. 12.)

[10] (Opp'n 2, Doc. No. 43; Am. Compl. ¶¶ 37–38, Doc. No. 12.)

[11] (Am. Compl. ¶ 39, Doc. No. 12; Opp'n 2, Doc. No. 43.)

a stroke.[12]  Ms. Kabir is now a nonverbal quadriplegic and can only communicate through a brain/computer interface.[13]

According to notes in her medical records, Ms. Kabir had a history of neck trauma in December 2020, related to an assault involving strangulation.[14]  Defendants' disputed interrogatory seeks the name and contact information for Ms. Kabir's former boyfriend, who is believed to be the assailant.[15]  Defendants have indicated an intent to depose this individual in an effort to learn more about this incident.  Defendants contend this incident caused prior vertebral artery trauma which may have led to clots and contributed to Ms. Kabir's stroke.[16]  Ms. Kabir opposes the motion, arguing the interrogatory is irrelevant and its potential harm outweighs the presumption in favor of broad discovery.[17]

## LEGAL STANDARDS

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[18]  Relevance in the discovery context is "to be construed

---

[12] (Am. Compl. ¶ 39, Doc. No. 12; Opp'n 2, Doc. No. 43.)

[13] (Am. Compl. ¶ 41, Doc. No. 12; Opp'n 2, Doc. No. 43.)

[14] (Mot. 3, Doc. No. 41; Opp'n 4, Doc. No. 43.)

[15] (Mot. 2, Doc. No. 41; Opp'n 4, Doc. No. 43.)

[16] (Mot. 2–3, Doc. No. 41.)

[17] (*See generally* Opp'n, Doc. No. 43.)

[18] Fed. R. Civ. P. 26(b)(1).

broadly to encompass any matter that bears on, or that reasonably could bear on any party's claim or defense."[19] If the discovery sought

> appears facially relevant, [] the burden shifts to the party resisting discovery to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad discovery.[20]

## DISCUSSION

Interrogatory 1 asks Ms. Kabir to:

Identify the contact information and identity (i.e., full legal name) of the former boyfriend of Sarah Kabir who is believed to reside in Hawaii. The contact information should include the last known address, last known email address, and last known phone number.[21]

Defendants contend Interrogatory 1 is relevant because the former boyfriend possesses information about Ms. Kabir's strangulation which resulted in prior neck trauma.[22] They argue such information is relevant to the issues of causation and damages where there is a possibility Ms. Kabir's injuries were preexisting and did not result from any misdiagnosis by Dr. Williams.[23] They contend any "prior vertebral artery trauma is very significant," "could have done substantial damage to [Ms. Kabir's] vertebral or carotid arteries," and may have led to clots

---

[19] *Allegis Inv. Servs. v. Arthur J. Gallagher & Co.*, No. 2:17-cv-00515, 2018 U.S. Dist. LEXIS 243885, at *6 (D. Utah May 25, 2018) (unpublished).

[20] *Lykins v. Certainteed Corp.*, No. 11-2133-JTM, 2012 U.S. Dist. LEXIS 115145, at *16 (D. Kan. Aug. 16, 2021) (unpublished).

[21] (Ex. 1 to Mot., Am. First Set of Interrogs. & Reqs. for Produc. of Docs. 2, Doc. No. 41-1.)

[22] (*See* Mot. 2–4, Doc. No. 41.)

[23] (*See Id.* at 2–3.)

4

not only in the "vertebral artery, but eventually clots in the basilar artery."[24] They argue this theory requires further exploring.[25]

Ms. Kabir argues the cause of the stroke is irrelevant because she only alleges Dr. Williams was negligent in treating the clot, not that he was responsible for causing it.[26] She also argues there are better sources for this information.[27] She contends seeking this kind of discovery from her former boyfriend only serves to harass and embarrass her.[28] Additionally, at the hearing, Ms. Kabir urged the court to prohibit this interrogatory *sua sponte* pursuant to Rule 26(b)(2)(C), arguing discovery regarding her preexisting injuries and/or prior treatment could be obtained from less burdensome or more convenient sources.[29]

Ms. Kabir's arguments are premature at this juncture. Courts can only consider issues presented which are ripe for determination. The scope of the discovery dispute presented here is quite limited. The dispute involves only the discoverability of the information requested in Interrogatory 1. Interrogatory 1 asks for the *name and contact information* of Ms. Kabir's ex-boyfriend, nothing else. While Defendants have indicated their intent to depose the ex-boyfriend regarding Ms. Kabir's preexisting injuries and associated treatment, they have yet to do so. For

---

[24] (*Id.* at 2.)

[25] (*Id.*)

[26] (Opp'n 4, Doc. No. 43.)

[27] (*Id.* at 5–6.)

[28] (*Id.*)

[29] *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

this reason, Ms. Kabir's arguments are based on events and/or discovery which has yet to occur and may never come to fruition. If Defendants ever give notice of Ms. Kabir's ex-boyfriend's deposition, such that it is actually at issue, it would then be appropriate to raise these arguments and/or seek a protective order.[30]

As for Ms. Kabir's Rule 26(b)(2)(C) argument, there may be less burdensome or more convenient sources for obtaining information regarding any preexisting injuries and/or treatment. But that is not the question before the court. The question before the court is whether there are less burdensome or more convenient sources for the information in Interrogatory 1: the name and contact information of Ms. Kabir's ex-boyfriend. Ms. Kabir has not established there are any.

## CONCLUSION

The information sought in Interrogatory 1 is relevant to Defendants' defenses and proportional to the needs of the case. Ms. Kabir has not shown its potential harm outweighs the

---

[30] *See* Fed. R. Civ. P. 26(c). In the last sentence of her opposition, Ms. Kabir asks the court to "enter a protective order forbidding discovery on the issue of the assault." (Opp'n 6, Doc. No. 43.) It is impermissible to make a motion for a protective order in a response. *See* DUCivR7-1(a)(3); *cf. Velasquez v. Frontier Med., Inc.*, 229 F.R.D. 197, 200 (D.N.M. 2005) ("According to [R]ule 26(c) of the Federal Rules of Civil Procedure, a person or party, by whom discovery is being sought, may *file a motion for protective order*." (emphasis added)). Additionally, Ms. Kabir failed to address the legal standards attendant to such a request.

presumption in favor of broad discovery. Accordingly, Defendants' motion[31] is GRANTED and Ms. Kabir is ordered supplement her response to Interrogatory 1 within seven days.

DATED this 27th day of June, 2023.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge

---

[31] (Doc. No. 41.)